Robert B. Sykes (#3180)
C. Peter Sorensen (#16728)
**SYKES MCALLISTER LAW OFFICES, PLLC**
311 S. State Street, Suite 240
Salt Lake City, Utah 84111
Telephone No. (801) 533-0222
bob@sykesmcallisterlaw.com
pete@sykesmcallisterlaw.com
*Attorneys for Plaintiffs*

---

## UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| AARON JAMES and TIFFANY JAMES, Heirs and Proposed Personal Representatives of the Estate of Zane James,<br><br>Plaintiffs,<br><br>vs.<br><br>CASEY DAVIES, and COTTONWOOD HEIGHTS,<br><br>Defendants. | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**<br><br>**~ Oral Argument Requested ~**<br><br>Civil No. 2:19-cv-341<br><br>Judge Howard C. Nielson, Jr.<br>Magistrate Judge Dustin B. Pead |

This Response addresses Defendants' Motion to Dismiss, Doc. 9, filed on June 18, 2019.  Defendants and the Court granted Plaintiffs an extension to answer until July 25, 2019. Doc. 14.

## BACKGROUND

On May 29, 2018, at around 6:00 am, Zane James was riding his motorbike home from a robbery he had just committed. Doc. 2, ¶ 10. As he passed a Cottonwood Heights Police

Department (CHPD) vehicle, Officer Betenson recognized Zane from another recent chase and began to pursue him.  Doc. 2, ¶ 53. Eventually Officer Betenson gave up the chase. Doc. 2, ¶ 53.

### Casey Davies

Officer Casey Davies was on his way into work that morning when he heard the call over his radio that there was a fleeing suspect on a motorbike. Doc. 2, ¶¶ 52-53. Instead of continuing to the police station, Davies began a pursuit of Zane which ended when Zane crashed his bike.  Doc. 2, ¶¶ 24, 55.  Zane got up and was limping away when, without warning or provocation, Davies shot him twice in the back at close range, from about 25-30 feet away.  Doc. 2, ¶¶ 28, 38-40, 66.

Defendant Davies claims in his motion that his shooting of Zane James was justified because Zane presented an immediate danger to Davies and others.  Doc. 9, p. 9. However, the facts pled in the Complaint, and deemed admitted in a Motion to Dismiss, establish that the shooting was not justified because Zane was running away, had no weapon in his hands when he was shot, and presented no immediate danger to anyone. Doc. 2, ¶¶60-62.  The facts as alleged by Plaintiffs are plausible and believable.  Defendants claim alternate facts.  Therefore, there is a conflict in the facts alleged between the parties.  Accordingly, claims against Defendant Davies should <u>not</u> be dismissed.

### Cottonwood Heights

Defendant Cottonwood Heights claims immunity from liability because no specific policies were stated in the Complaint which caused a violation of Zane's constitutional rights. The policies and practices in place have been largely inaccessible to Plaintiffs' counsel, so some

discovery is necessary in order to obtain those.[1]  Therefore, claims against Cottonwood Heights should <u>not</u> be dismissed.

Furthermore, by introducing new evidence in the Motion to Dismiss, Defendants have converted the motion into one for summary judgment. Summary judgment should be denied because witness testimony disputes several facts which are material to this case.  Doc. 2, ¶60.

## <u>KEY FACTS RELEVANT TO THIS OPPOSITION</u>

1. On May 29, 2018, at around 6:00 am, Zane James entered a store with a realistic-looking airsoft gun (a toy gun) and proceeded to rob the establishment. Doc. 2, ¶ 20.

2. While on his way home Zane was pursued by two officers, Betenson and Davies. Doc. 2, ¶ 53.

3. Before Zane reached home, he crashed his motorbike in a suburban neighborhood while making a turn, severely injuring himself. Afterward, he got up and tried to limp away. Doc. 2, ¶¶ 25-28.

4. Once Zane had limped a short distance, Officer Davies pulled up behind him, exited his car, ducked behind the door, and fired four shots at Zane's back. Doc. 2, ¶ 35.

5. Officer Davies was 25-30 feet away from Zane when he fired. Doc. 2, ¶ 66.

6. Officer Davies did not give any warning or opportunity for Zane to stop before he fired. Doc. 2, ¶ 64.

7. One bullet entered Zane's left shoulder and severed his spine. Another bullet struck his left thigh, and the other two bullets missed. Doc. 2, ¶¶ 37-40.

---

[1] Plaintiffs did receive a copy of the Policies and Procedures on 07/18/19 in response to a GRAMA request.  However, Plaintiffs' counsel has not yet had an opportunity to review them in depth and does not know if they are complete.

8.      When Zane was shot, he was limping away from Davies and his back was turned. Doc. 2, ¶ 34.

9.      When Zane was shot, he did not have a weapon in his hands. His airsoft gun was tucked away inside his pocket. Doc. 2, ¶ 29.

10.     Neither officer had an active lapel camera at the time of the shooting. Doc. 2, ¶¶ 57-58.

11.     Officer Betenson did not arrive on the scene until after the fourth shot was fired. Doc. 2, ¶ 60.

12.     Zane was paralyzed and rendered quadriplegic by one of the bullets. He died three (3) days later. Doc. 2, ¶¶ 77, 96.

13.     At least one eye witness affirmed that at the time of the shooting, a) Zane had *no visible weapon;* b) Davies shot Zane *in the back as he was running away;* c) *no warning* or opportunity to stop was given by any officer; d) no citizens or officers were nearby or *in danger* from Zane; e) Zane *never yelled any threats* at officers; f) Zane appeared to be *injured* as he ran; g) *no officer said "stop or I'll shoot";* and h) *Officer Betenson, an alleged witness, actually arrived at the scene late,* just as Davies fired his fourth shot.  Doc. 2, ¶60.

## STANDARD OF REVIEW

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the facts asserted in the complaint must be taken as true. *See, e.g., Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016).  In order to survive the motion, the facts in the complaint must be sufficient to establish "a claim to relief that is plausible on its face."  *Dorf v. Bjorklund*, 531 F. App'x 836, 837 (10th Cir. 2013).  However, Rule 12(d) states that if "matters outside the pleadings are presented to and not

excluded by the court, the motion must be treated as one for summary judgment." Fed. R. Civ. P. 12(d).

In the "Background" section of the Motion to Dismiss, Defendants included a photograph of the airsoft gun that Zane James had in his possession at the time of his death. Doc. 9, p. 3. Despite Defendants' claim that the photograph is not offered as evidence, the photograph is not contained in the Complaint. *Id*. The Complaint only mentions that Zane possessed a "B.B.," "airsoft," or "toy" gun.  Doc. 2, ¶¶ 20, 29, 81.  For the purposes of a Motion to Dismiss, these descriptors alone must be taken as true, especially because Zane did not have the gun visible or in his hands during his encounter with Officer Davies. *Id*., ¶¶ 29, 60. Inclusion of a photograph provides additional evidentiary information that is not appropriate for a Motion to Dismiss. Additionally, there are many more "contested facts" and contested inferences advocated or set forth by Defendants.  See, Point I below for some of these.  Accordingly, this Motion to Dismiss must be denied, or converted to one for summary judgment.

In *New York Times*, the Times requested the audio files from the Challenger crash under the Freedom of Information Act.  *New York Times v. NASA*, 920 F.2d 1002 (D.C. Cir. 1990). A transcript had already been released and, accordingly, the court denied the Times the audio because it found that the audio tape contained personal information beyond what was provided by the transcript.  *Id*. at 1005.

Similarly, the photograph of the toy gun in Zane's pocket provides information beyond what was written in the Complaint. It introduces context to the description which goes beyond the scope of the Complaint. In taking the facts of the Complaint as true, the photograph adds additional information that is improper at this stage of the litigation unless converted under Rule 12(d).

5

Furthermore, it may be wise to address these issues in a motion for summary judgment now.  When claims are made under § 1983, it is commonplace for defendants to make a motion for summary judgment. *See, e.g., Tolan v. Cotton*, 572 U.S. 650 (2014); *King v. Hill*, 615 Fed. Appx. 470 (10th Cir. 2015). Using what information is already available, it can be demonstrated that there are clear disputes of material facts. This is unlikely to change as the parties undertake discovery since an eye witness directly contradicts the statement given by at least one of the officers who responded to the scene.  Doc. 2, ¶¶60-62.

## ARGUMENT

### POINT I

### ~ Defendants' Recitation of Facts is Unreliable ~

**DEFENDANTS CITE, REFERENCE AND DESCRIBE FACTS IN THE CASE INACCURATELY AND UNRELIABLY, SO AS TO LEAVE FALSE IMPRESSIONS ABOUT WHAT THE COMPLAINT SAYS.  THE COURT SHOULD DISREGARD SUCH INACCURATE CITATIONS OF THE FACTS.**

On a motion to dismiss, the court is required to take well-pled facts as true and show that defendants should still prevail despite these well-pled, true facts. *Dorf v. Bjorklund,* 531 F.App'x 836, 837 (10th Cir. 2013).  Instead, Defendants here repeatedly mischaracterize and misstate the facts, leaving inaccurate and false impressions about what Plaintiffs' well-pled facts actually are.  Defendants then argue against these weakened, inaccurate and false characterizations of Plaintiffs' facts, trying to show that Defendants should prevail on their Motion to Dismiss.  The Court should reject such a strawman approach as inconsistent with the law on motions to dismiss.  Defendants are never permitted to mischaracterize the facts as alleged by plaintiffs.  They are required to accept them. *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016).

There are many instances of mischaracterization. The most important mischaracterization is Defendants' claim that it is somehow admitted that Davies shot Zane in the back because he feared for his safety and the safety of nearby residents. Defendants cite paragraphs from the Complaint which they claim support this contested supposition. The Court should reject this approach.

Defendants mischaracterize the Salt Lake District Attorney's Office declination to file criminal charges against Defendant Davies. Defendants claim it was "on the basis he could likely show he feared he was in imminent danger of serious bodily injury or death at the time of the shooting." Doc. 9, pp. 1-2, citing the Complaint, Doc. 2, ¶¶ 97-103. There are two problems here. _First_, it may or may not be that the District Attorney declined to file criminal charges for the stated reason that Davies believed he was in imminent danger of serious bodily injury, as alleged by Defendants. So what. That evidence is obviously <u>not included</u> in Defendants' Memorandum. It would be hearsay and it would be introducing outside evidence that would convert the matter into a Motion for Summary Judgment. _Second_, Defendants mischaracterize the Complaint, Doc. 2, ¶¶ 97-103, as the basis for the claim that Davies felt he was in imminent danger of seriously bodily injury or death.

That characterization is false. Paragraphs ¶¶ 97-103 say the opposite. The subtitle for those paragraphs is "Improper and Questionable Investigation." Paragraph 97 indicates that there was an investigation. Paragraph 98 indicates that Officer Davies refused to answer questions or provide a statement to investigators. Paragraph 99 says that Davies obtained legal representation within hours. Paragraph 100 says all other officers at the scene were interviewed by investigators on the day of the shooting. Paragraph 101 says that Zane was shot in the back and did not have his hands on a weapon, so a detailed investigation on justification was required.

Paragraph 102 says that in the entire task force report there is essentially no mention that Zane was shot in the back.  Paragraph 103 details nine (9) criticisms of the Gill report, such as why there were no inquiries or reports of eye-witness accounts to the shooting.  Doc. 2, ¶¶ 97-103.  There is nothing in ¶¶97-103 to sustain the characterization that these paragraphs "could likely show he feared he was in imminent danger of serious bodily injury or death at the time of the shooting."  Doc. 9, pp. 1-2.  Such a conclusion is a fabrication.  Yet, this is the primary basis for the Motion to Dismiss.

## POINT II

### ~ Well-Pled Facts Show Constitutional Violations ~

**PLAINTIFFS' CLAIMS UNDER 42 U.S.C. § 1983 SHOULD NOT BE DISMISSED BECAUSE THE WELL-PLED FACTS OF THE COMPLAINT ALLEGE A VIOLATION OF CLEARLY ESTABLISHED CONSTITUTIONAL RIGHTS.**

In order to overcome qualified immunity for a police officer a two-pronged inquiry must be made. First, the facts, "[t]aken in the light most favorable to the party asserting the injury, [must] show the officer's conduct violated a [federal] right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Second, that right must be "'clearly established' at the time of the violation." *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Hope v. Pelzer*, 536 U.S. 730 (2002)). The prongs need not be analyzed in a specific order. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Defendants are not entitled to dismissal of the § 1983 claim because sufficient facts have been asserted which demonstrate that Officer Davies violated Zane's clearly established right to be free from an unreasonable seizure. This right was clearly established at the time of the shooting because case law existed which established precedent beyond mere generalities. *See*

*Saucier*, 533 U.S. at 201.  Additionally, there is a dispute of material facts so the Defendants are not entitled to summary judgment.

### A.       Zane James' right to be free from unreasonable seizure was clearly established at the time of the shooting.

A right is "clearly established" when the action of violating that right is such that a reasonable person would have known that it is against the law. *Tolan*, 572 U.S. at 656. The Supreme Court has held that a generalization of the law is insufficient for this prong to be established, but rather that the inquiry "must be undertaken in light of the specific context of the case." *Saucier*, 533 U.S. at 201. However, the Court "expressly rejected a requirement that previous cases be fundamentally similar . . . [T]he salient question . . . is whether the state of the law . . . gave [defendants] fair warning." *Hope*, 536 U.S. at 741. The question that must be asked is whether a reasonable officer could be aware that his conduct is in violation of the law. *Saucier*, 533 U.S. at 201-02. It is not required to have a case with nearly identical facts, however the existing case law must establish clear contours for the right that provide fair notice to the officer. *Id*. A reasonable misunderstanding of the law is subject to immunity so the law must be sufficiently clear as to render any misunderstanding unreasonable. *Id*. at 205.

### B.       Cases on point hold that deadly force is not justified where there is no immediate threat to the officer or to others.

Initially, it must be emphasized that there are no facts in the Complaint that justify Defendants' claim that Davies somehow "feared he was in imminent danger of serious bodily injury or death at the time of the shooting."  Doc. 9, pp. 1-2.  See discussion above in Point I.  That claim is in serious dispute.  The Complaint sets forth many facts to the contrary of that conclusion. The Complaint demonstrates that there was no immediate threat to the officer or to others.  Doc. 2, ¶¶31-34, 59-62.

The law is clear that deadly force is not justified when there is no immediate threat to the officer or others. In *Tolan*, the Supreme Court overturned the district court's order for summary judgment because the plaintiff's version of the facts, if taken to be true, established that Robert Tolan did not pose an immediate threat to the officers or others. *Tolan*, 572 U.S. at 660. The Jameses make the same argument here, that the facts alleged by Plaintiffs in the Complaint, when taken to be true, show that Zane did <u>not</u> pose an immediate threat to the officers or to others.

In *Tolan,* Mr. Tolan was laying face-down on his porch at the order of two police officers. *Id*. at 652. One of the officers moved to restrain Tolan's mother. *Id*. at 653. Tolan contended that the treatment of his mother was overly forceful as the bruises showed afterward. *Id*. According to him and his family, Tolan rose to his knees and shouted, "Get your f***ing hands off my mom." *Id*. At that point, one of the officers shot at him three times. *Id*. According to the officers' version of the facts, Tolan had lunged toward them, or, alternatively, that they thought he had lunged toward them because the light on the porch was too dim. *Id*. at 653-55. They also argued that his statement constituted a threat. *Id*. Davies makes comparable claims of an alleged threat of harm by Zane and allegedly or purportedly having his hands in his waist area where there might be a gun. See Doc. 9, p. 11.

But Tolan produced eye witness testimony disputing these defense "facts." *Id*. at 652-53. The Court held that the dispute of facts was too substantial to be decided on summary judgment and must go to a jury. *Id*. at 660 ("The witnesses on both sides come to this case with their own perceptions, recollections, and even potential biases. It is in part for that reason that genuine disputes [of fact] are generally resolved by juries"). Taken in the light most favorable to the injured party, the facts asserted by the plaintiff would establish that the officer could not have

10

reasonably believed he was in danger because Tolan was not moving toward him and was not brandishing a weapon, nor did he threaten the officer. *Id.*

Similarly, in *James v. Davies,* taken in a light most favorable to the Jameses, the Jameses have alleged facts that Davies could not have reasonably believed he was in danger. Among multiple facts that support this conclusion, the Jameses have alleged that Officer Betenson, who claims to have seen the shooting, *did not actually see the shooting* and was engaged in a cover-up. Doc. 2, ¶¶ 89-95. It is also alleged that Officer Davies provided falsehoods at the scene and engaged in a cover-up, i.e., falsely claiming that Zane was digging through his pockets and continued to conceal his hands. Doc. 2, ¶¶79-88. It is further alleged that a witness supported the Jameses' position on these matters, which is contrary to Officer Davies' position. Doc. 2, ¶¶ 59-66.

There is substantial Tenth Circuit case law that supports the Jameses. In *King*, police responded to a report of domestic disturbance at Mr. King's house. *King*, 615 Fed. Appx. at 471. King's step-daughter had reported that King was making threats. *Id.* At the house, the police communicated with King, who was standing on his porch with a coat draped over his arms, from a distance of approximately 25 yards or further. *Id.* Officers claimed to believe that King had a gun hidden under the coat. *Id.* at 472. During the interaction, King was threatening to blow them all up with black powder he claimed to have stored in the house unless they left his property. *Id.* The officers ordered King to put down whatever he had in his hands. *Id.* King took a step forward and moved to display his hands to the officers when Officer Hill shot him three or four times. *Id.* at 472-73.

The district court denied summary judgment to Hill and the Tenth Circuit affirmed because "the law was clearly established that a law enforcement officer may not use deadly force

to seize an unarmed person who is not posing a threat to the officer or others." *Id*. at 477 (quotation omitted). Though King was making threats, he was not in a position to immediately carry them out. *Id*. King's movement which resulted in him being shot was non-threatening, at least if considered in the light most favorable to King. *Id*. Furthermore, King's refusal to comply with orders to drop his weapon cannot be reasonably seen as a threat considering that he was not holding a weapon. *Id*.

In yet another case, the Tenth Circuit held that conflicting witness statements create a dispute of material facts which mandate a review by a jury, and therefore, affirmed a denial of summary judgment. *Zuchel v. Spinharney*, 890 F.2d 273, 275-76 (10th Cir. 1989). There, police responded to a disturbance which Leonard Zuchel caused at a McDonald's restaurant. Zuchel had left the restaurant and encountered some teenage boys by the time two officers arrived. *Id*. at 274. After an argument with the boys, Zuchel had pulled some nail clippers out of his pocket which one of the boys told the officers was a knife. *Id*. When Zuchel approached the officers, Officer Spinharney shot him four times. *Id*.

Nine witnesses for the defense reported that Zuchel was making verbal threats and threatening motions as he approached the officers and that he was less than four feet away when Spinharney shot him. *Id*. at 275. *However, a multitude of witnesses disputed these facts*. The evidence for the plaintiff, if true, would have established that Zuchel was not a threat to the officers and, thus, the facts had to go to a jury. *Id*. Therefore, summary judgment was denied.

A district court denied summary judgment to a police defendant on an excessive force claim because the evidence showed that Officer Smith's use of deadly force was unreasonable given the circumstances. *Dorato v. Smith*, 108 F. Supp. 3d 1064, 1069 (D.NM 2015). Officer Smith responded to a report of a stolen car and, upon finding a parked car that matched the

description, he approached the person inside. *Id*. at 1074-76. After announcing that he was a police officer, he ordered Mr. Tillison to put his hands out the window. *Id*. Instead, Tillison put the car in gear and backed into Smith's cruiser, attempting to flee. *Id*. at 1077-1079.

Tillison moved the car forward and stuck his right arm out the window holding his phone. *Id*., 1083-84. Smith claimed he thought the phone was a gun so he shot at Tillison, hitting him. *Id*. Smith argued that his use of deadly force was reasonable because Tillison could have hit him with his car, that he thought the cell phone was a gun, and that he was responding to a dangerous crime. *Id*. at 1145. The court held that a jury could reasonably conclude that use of deadly force was excessive because the car was never directly pointed at Smith so it could not hit him and that the weather conditions were such that he could have been able to tell that the object in Tillison's hand was not a gun. *Id*. at 1146-49.

The Ninth Circuit similarly held in *Lopez* that a dispute of material facts precludes summary judgment. *Estate of Lopez v. Gelhaus*, 871 F.3d 998, 1021 (9th Cir. 2017). Andy Lopez, a thirteen-year-old boy, was walking down the sidewalk holding a toy gun resembling an AK-47 when he was noticed by two police officers on patrol. *Id*. at 1002. No other witnesses were present. *Id*. at 1009. The toy gun was pointed toward the ground. *Id*. The officers pulled up behind him and stopped the car. *Id*. The officers dispute as to whether or not they sounded the siren. *Id*. They also dispute as to whether Andy looked over his shoulder and saw them. *Id*. Gelhaus opened the door, stepped out behind it, and yelled "Drop the gun!" *Id*. When Andy turned, Gelhaus shot at him eight times, hitting him with seven of the shots. *Id*. at 1003.

The Ninth Circuit affirmed the district court's denial of summary judgment. *Id*. at 1009. A jury must evaluate whether Andy actually pointed his gun at the officers or if he was

13

merely turning to see who yelled at him. *Id*. at 1021. If the latter was true, a reasonable officer would not have perceived him as a threat. *Id*.

### C. Cases holding for police defendants are distinguishable because of the presence of an immediate deadly threat.

There are a number of cases holding for police defendants that are readily distinguishable from the facts in the Zane James case. The Court will see that in each one of these cases, there was reasonable fear of harm by the officers because of: the presence of a gun in a suspect's hands; the reasonable prospects of a gun; hostile motions; the expression of threats; threatening movements; and/or the advancing on the officer by the suspect. Most of these cases indicate that a combination of these factors is required, not just one factor alone. The facts of the *James* case are quite different than the facts of the cases below, as the Court will see.

The Tenth Circuit affirmed an order for summary judgment in *Johnson* for the police officer who shot Mr. Johnson. *Johnson v. City of Roswell*, 752 Fed. App. 646, 647 (10th Cir. 2018). This opinion, though issued after the incident in *James*, provides helpful guidance as to when summary judgment is appropriate in shooting cases. In this case, Johnson got into a fight with his brother-in-law and shots were fired. *Id*. at 648. The brother-in-law went to the police station and reported Johnson, at which point several officers responded to Johnson's house. *Id*. Thinking it was the brother, Johnson exited the door suddenly with gun in hand and Officer Lannoye fired at him five times. *Id*. We do not have similar facts in *James*. In *Johnson*, the victim was actually holding a gun and moving toward officers. *Id*. at 648. The opposite was true in *James* (no gun in hand, moving away).

In *Taylor v. Salt Lake City*, 2019 WL 2164098 (D. Utah May 17, 2019), three officers responded to the dispatch of three men who flashed a gun, although no violence was

reported. *Id*. at 3-4. Two of the three stopped but Taylor began walking away. *Id*. at 7. Taylor began making digging motions in his pants. *Id*. at 11. When Taylor was about fifteen feet away, he turned around and kept walking away backwards. *Id*. at 12. Suddenly he pulled both of his hands out of his pants while grasping his shirt in what both officers believed was a drawing motion. *Id*. In response, Officer Cruz fired two shots, striking Taylor both times and killing him. *Id*. It was then discovered that Taylor did not have a gun in his possession. *Id*. at 16.

As in *Taylor*, many courts consider an order for the suspect to stop to be an important factor. *See*, *e.g.*, *Lopez*, 871 F.3d at 1002. By contrast, in *James* there was no warning given, no order to stop, no non-compliance, no movement toward bystanders, and no sudden movements from his waistband. Doc. 2, ¶¶ 60, 75-76.

These cases stand for the rule that an officer may not use deadly force against a suspect unless they reasonably believe the suspect poses an immediate danger. Whether Davies' alleged belief was reasonable is a question for the jury. These cases also support Plaintiffs' position that there is a question of fact for the jury as to whether Davies' use of deadly force met constitutional standards.

### D.      Zane James suffered a violation of his Fourth Amendment right to be free from an unreasonable seizure.

The federal right which is violated in cases of excessive force is the Fourth Amendment right to be free from an unreasonable seizure. *Tolan*, 572 U.S. at 656. To determine whether the right was violated, the court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Tennessee v. Garner*, 471 U.S. 1, 8 (1985). Courts employ a reasonableness standard to determine whether the seizure was justified.

In cases of excessive force, courts recognize that police officers often have to make split-second decisions whether or not to employ force when someone is in danger of attack. *See Graham v. Connor*, 490 U.S. 386, 397 (1989). Thus, the reasonableness standard under the Fourth Amendment must be analyzed from the perspective of a reasonable officer at the time force was used, rather than in hindsight. *Weigel v. Broad*, 544 F.3d 1143, 1152 (10th Cir. 2008).

In *Garner*, the Supreme Court outlined when it is appropriate to use deadly force on a fleeing felon. Shooting a suspect may be justified

> if (1) the suspect ***threatens the officer with a weapon*** or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm, . . . (2) if necessary to ***prevent escape***, and if, (3) where feasible, some ***warning*** has been given.

*Garner*, 471 U.S. at 11-12 (numbering and emphasis added). Under that analysis, all three elements must be satisfied.

However, in *Graham*, the Court provided a number of non-exclusive factors to consider when performing the analysis including "the ***severity of the crime*** at issue, whether ***the suspect poses an immediate threat to the safe***ty of the officers or others, and whether he is ***actively resisting arrest or attempting to evade arrest*** by flight." *Graham*, 490 U.S. at 396 (emphasis added). The Tenth Circuit elaborated some additional factors which should be considered.

> These include whether the officers ordered the suspect to drop his weapon, and the suspect's ***compliance with police commands***; whether ***any hostile motions*** were made with the weapon towards the officers; the ***distance*** separating the officers and the suspect; and the ***manifest intentions*** of the suspect.

*Estate of Larsen ex. rel. Sturdivan v. Murr*, 511 F.3d 1255, 1260 (10th Cir. 2008) (numbering omitted; emphasis added). These factors all collectively show that under the totality of the circumstances, Officer Davies' use of force was <u>not</u> reasonable.

16

E.   **A reasonable officer would not have perceived a threat of serious harm to himself or others.**

Defendant claims that Davies reasonably but mistakenly perceived a threat because he was responding to an inherently dangerous crime and that Zane had placed him in a dangerous or life-threatening situation. Doc. 9, p. 10.  This is a factual supposition since Davies "refused to make a statement to investigators about his decision to shoot Zane" (Doc. 2, ¶83), and Davies' statements were false, as alleged in the Complaint.  Doc. 2, ¶¶86, 87 ("Davies falsely claimed that he shot Zane to death because he was worried about the threat of Zane shooting him").

While it is true that Zane was fleeing from an "armed robbery," an inherently dangerous crime, it makes no legal difference. This is only one factor in the analysis. Defendant cites *Ryder*, a *pre-Graham* case, in which an officer was found to be justified in his shooting of a teenage girl because she had just been involved in the theft at a restaurant. *Ryder v. Topeka*, 814 F.2d 1412, 1419 (10th Cir. 1987).  It is probably no longer good law because *Graham v. Connor* in 1989 changed the reasonableness test which is applied to excessive force. *See, Mitchell v. City of Saputpa,* 857 F.2d 713, 714 (10th Cir. 1988).  Each *Graham* factor is merely one factor in the totality of the circumstances, including the severity of the crime. While the severity factor, armed robbery, may weigh against Zane, it is but one factor.

There are also pronounced factual differences in *Ryder.* Ryder was running away late at night and was about to turn a corner and be lost from sight by the pursuing officer.  *Id*. at 1416.  She also had her hands in her pockets.  *Id*. at 1421.  Because it was dark and Ryder could reasonably have created a trap for the officer, the court found that shooting her was reasonable.

Here, by contrast, Zane was limping while it was light outside. *See* Doc. 2, ¶ 20. He was not near any source of cover, and his hands were outside of his pockets. Doc. 2, ¶¶ 24, 28,

30. The dangers present for the officer in *Ryder* were not present for Officer Davies. For example, Zane was some distance from the robbery. Doc. 2, ¶ 55. Davies saw Zane only as a fleeing suspect and had no specific knowledge of the crime so his suspicion that Zane was armed could be found unreasonable. "[T]he fact that [the suspect] had committed a violent crime in the immediate past is an important factor but it is not, without more, a justification for killing him on sight." *Harris v. Roderick*, 126 F.3d 1189, 1203 (9th Cir. 1997).

Additional factors to be considered are whether there were any hostile motions made by Zane, the distance between Zane and Davies, and Zane's manifest intentions. First, there were no hostile motions. In *Tolan*, Mr. Tolan was shot because he rose to his knees from laying on the ground. *Tolan*, 572 U.S. at 653-55. The court found that *without any movement toward the officer*, hostility could not be reasonably ascertained. *Id*. at 660. Similarly, in *King*, Mr. King took a step toward the officers from many feet away. *King*, 615 Fed. Appx. at 472-73. This was also found to be an innocent step without hostile intent. *Id*. at 476. In our case, Zane was moving away from Officer Davies and had his arms held to his side. Doc. 2, ¶¶ 34, 60. If hostile movement is not found where the victim moves toward the officer, it cannot be found if Zane was moving in the opposite direction.

Contrast Zane James with *Taylor*. There, Mr. Taylor turned around to face the officers with his hands grasping inside of his pants and suddenly drew them out of his pants. Accordingly, the court upheld immunity for the officers because the motions Taylor was making toward them were objectively hostile in nature. Here, no such conclusion can be drawn. Even if Zane's hands were inside his pocket (which they were not, Doc. 2, ¶¶86, 94), he made no effort to turn around or to draw them out in a threatening way.

Next, the Complaint alleges that the distance between Zane and Davies was about 25-30 feet. Doc. 2, ¶ 66. This was far enough that it would have been fairly difficult for Zane to pose a threat to Davies, especially since Davies was behind his car.

Defendant cites *Atencio v. City of Albuquerque*, 2015 WL 13651179, *2 (D.N.M.), where an officer was found to be justified in shooting a running suspect who was approaching a neighborhood because it was likely that if the suspect made it into the neighborhood, he would escape. However, this distance was at least ten (10) times the distance between Zane and Davies, making escape far more probable. *Id*.; Doc. 2, ¶ 66.

Finally, Zane's manifest intentions were not hostile. It was obvious to a witness that Zane was injured and trying to get out of the street. Doc. 2, ¶¶ 28, 60.  He was limping and was not headed toward the entrance to any house. Defendant's speculative theories that Zane would try to escape into a house and harm the occupants are just that: speculation.  In contrast, Plaintiff's Complaint says the opposite.  Doc. 2, ¶ 76.

Considering the case law and the totality of the circumstances, Davies' alleged belief that Zane presented a danger to others was unreasonable.  Davies was responding to a crime after it had occurred. He did not give Zane a warning that he would shoot. Zane did not have a weapon in his hands, and he did not make any hostile motions toward Davies.  He was limping. There were no bystanders nearby.  A reasonable officer in the same circumstances would not have considered Zane to be an immediate threat to himself or to bystanders. At a minimum, it is a question of fact for a jury.

**F.**   **Deadly force was not necessary to prevent Zane from escaping capture.**

Defendant claims that deadly force was necessary to prevent Zane from escaping because lesser force would have given Zane a chance to break into one of the nearby houses and harm the inhabitants. This is, of course, totally speculative.  It is also highly improbable at 6:10 am. Defendant further argues that officers are not forced to necessarily use the least intrusive or alternative means. The Court in *Garner* stated "Where the suspect poses no *immediate* threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Garner*, 471 U.S. at 11. This case abolished the "fleeing felon rule" and substituted the immediate threat rule.  Zane was not an immediate threat to anyone.

*Garner* is very similar to *James*. Zane was slowly limping away from his crashed bike when Davies pulled up behind him and shot him in the back. Doc. 2, ¶ 76. The risk of Zane getting away or entering one of the nearby houses was slim. Zane was obviously injured, and at 6:10 am, he was unlikely to get into a house.  He was not limping toward the entrance of the house nearest him. Doc. 2, ¶¶ 60-61. There were also many officers nearby, such as Betenson, only seconds away. Doc. 2, ¶ 73. Zane had no realistic chance of escaping.

*Cordova* raised arguments similar in principle to Davies' arguments here. But the Tenth Circuit found that the risk posed by the suspect that he would try to ram and harm drivers on the freeway was unreasonable. *Cordova v. Aragon*, 569 F.3d 1183, 1190 (10th Cir. 2009), *see also Torres v. White*, 685 F. Supp. 2d 1283, 1291 (D. OK. 2010). "The threat [to others] must have been more than a mere possibility." *Id*.

Defendant here argues the "mere possibility" that Zane might enter nearby houses and commit felonies against the inhabitants justified Officer Davies' use of deadly force. Davies

speculates that allowing Zane to "escape" would put those families at risk. Doc. 9, pg. 13.  There

was no movement toward a home, nor an indication that Zane intended to enter one.  Because this

risk is purely hypothetical, it fails *Cordova*'s reasonable standard to justify deadly force.

Additionally, Davies was no more than thirty (30) feet away from Zane, a distance he could easily

have crossed on foot before Zane got much further. Davies also knew that backup was on the way,

thus the risk of Zane escaping was non-existent.  Doc. 2, ¶¶ 73-74.  There was no need to use

deadly force to prevent escape or entry into a home.

**G.** **The circumstances did not warrant deadly force without at least**
**warning of such force.**

Defendant claims that because a warning would have given Zane a chance to

escape, it was not feasible to give such a warning.  Doc. 9, pp. 14-15.  He argues that a verbal

warning was improper because Zane was already ignoring the police sirens that were pursuing

him.  However, the case upon which that argument is based is not binding in this jurisdiction.  *See*

Doc. 9, p. 14.  Looking at this jurisdiction, most courts interpret *Garner* as requiring a *verbal*

warning, if feasible.  *See, e.g., Casey v. City of Fed. Heights*, 509 F.3d 1278, 1283 (10th Cir. 2007)

("The absence of any warning--or of facts making clear that no warning was necessary--makes the

circumstances of this case especially troubling").

Furthermore, the distant sirens do not constitute an adequate warning that Davies

intends to use deadly force. The sirens perhaps alerted Zane to the possibility of his arrest. But

when Zane ignored them, he was not thereby made aware of the possibility of being fatally shot.

Perhaps the situation would have been different if Zane had not crashed but kept riding away on

his bike.  However, because he was injured, limping, and on foot, the situation changed. Officer

Davies had the chance to warn Zane and give him the opportunity to comply.  Zane was visibly

injured and would probably have given up had he been presented the chance. Without the option to comply, Zane was essentially executed.

Zane James did not receive a warning when it was feasible to do so. Davies shot him in the back as he was limping away.  Because none of the elements provided under *Garner* are established, it must be found that Davies violated Zane's right to be free from unreasonable seizure.

### H.   Cottonwood Heights may be held liable due to a lack of policies which, had they been in practice, could have prevented Zane James' death.

To hold the city of Cottonwood Heights liable for the death of Zane James, it must be shown that (1) there is a Cottonwood Heights policy or practice that is unconstitutional, and (2) that there is a causal link between the unconstitutional policy or practice and Zane's death. *See Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010). Defendant claims that the pleading standard is not met because no specific practices are identified in the complaint. Doc. 9, p. 17. However, particular practices were identified such as a lack of proper training and supervision regarding the appropriate use of firearms. Doc. 2, ¶¶ 140-45. While this is a general statement, it represents the lack of policies which, if in place, would serve to protect the rights of the community. Failure to provide such training and supervision is deliberately indifferent to the rights of the constituents the police department is meant to protect. Though the complaint is missing specific instances where the lack of a policy caused a violation of rights, it is still early in the course of this litigation. After some period of discovery, such instances will likely be provided with specificity.

**POINT III**

**~ State Claims ~**

**PLAINTIFFS' CLAIMS UNDER UTAH CONSTITUTION ART. 1, §§ 1, 7, 14, AND 25 SHOULD NOT BE DISMISSED AND SUMMARY JUDGMENT SHOULD BE DENIED.**

A.   **The *Spackman* test is satisfied with regard to claims against Defendant Davies.**

Under *Spackman v. Board of Educ. of the Box Elder County Sch. Dist.*, 2000 UT 87, two prongs must be satisfied in order for a plaintiff to obtain monetary damages against a municipal employee for a constitutional violation. First, the constitutional clause must be self-executing. *Id*. at ¶ 1. Second, three elements must be satisfied: there must be a flagrant violation of a constitutional right, existing remedies must not redress their injuries, and equitable relief must be wholly inadequate to protect their rights. *Id*. at ¶¶ 23-25.

i.   **Utah Constitution Art. 1, §§ 1, 7, 14, and 25, are self-executing.**

The Utah Supreme Court has explicitly established that Utah Constitution Art. 1, §§ 1, 7, and 14 are self-executing. *Spackman*, 2000 UT 87, ¶ 10; *Jensen v. Cunningham*, 2011 UT 17, ¶¶ 62-63. Furthermore, the Court has stated that "a constitutional provision that prohibits certain government conduct generally qualifies as a self-executing clause." *Spackman*, 2000 UT 87, ¶ 8. Thus, Art. 1, § 25 is also self-executing since it prohibits the government from violating rights that the people possess which are not enumerated in the state constitution.

ii.   **Officer Davies committed a flagrant violation of Zane's rights.**

A flagrant violation of rights has occurred when a defendant "violate[s] clearly established constitutional rights of which a reasonable person would have known." *Spackman*, 2000 UT 87, ¶ 23. This is the same standard as the clearly established prong which is required for

23

federal § 1983 claims. The paragraphs above concerning clear establishment of the law are hereby incorporated by reference.

### iii. There is no existing remedy and equitable relief is wholly inadequate to protect Zane's rights.

*Spackman* requires that existing remedies do not redress a plaintiff's injuries. *Id*. at ¶ 24. If Zane's injuries would be fully compensated through other means, monetary damages are not allowed. This court has ruled that damages accrued from a federal § 1983 claim are considered as an existing remedy. *Asay v. Daggett County*, 2019 U.S. Dist. LEXIS 5794, 20 (D. UT). Thus, if the damages received from the federal claim redress Zane's injuries, no monetary damages would be allowed for the Utah Constitutional claims. Zane was nineteen (19) years old and because of a police officer's bullet, he is now dead. The damages received under the federal claim of action could never redress the injury caused to Zane and to his family. Therefore, existing remedies are not adequate.

*Spackman* likewise requires that equitable relief be wholly inadequate. *Spackman*, 2000 UT 87, ¶ 25. Because Zane is dead, no injunction or other form of equitable relief could possibly serve to protect his rights.

### B.   The *Kuchcinski* test is satisfied with regard to claims against Defendant Cottonwood Heights.

The Utah Supreme Court outlined a test recently in *Kuchcinski* which is similar to that in *Spackman* to establish liability for municipalities. *Kuchcinski v. Box Elder County*, 2019 UT 21, --- P.3d ----. The test is the same as in *Spackman* with the only difference being the requirement for the "flagrant violation" element. *Id*. at ¶ 31. For all other elements of the test, the above paragraphs concerning the *Spackman* test are hereby incorporated by reference.

Under *Kuchcinski*, a flagrant violation of a constitutional right is committed by a municipality when there is "(1) the existence of a municipal policy or custom, (2) that this policy or custom evidences a deliberate indifference to the plaintiff's constitutional rights, and (3) that this policy or custom was closely related to the injury." *Id.* at ¶ 32. This is intentionally quite similar to municipal liability under a federal § 1983 action. *Id.*

The Complaint contains pleadings of practices which evidence deliberate indifference to Zane's constitutional rights by the CHPD. Doc. 2, ¶¶ 140-43. Though repeat offenses have not yet been shown as required by *Kuchcinski*, it is early in the litigation and such evidence can likely be produced after a period of discovery. *Kuchcinski*, ¶ 34. Furthermore, such a policy or practice, assuming its existence, is closely related to the injury because Zane would not have died were it not for the lack of accountability by CHPD when it comes to use of firearms against civilians. *See id.* at ¶ 35.

### C.   Summary judgment should not be granted on the § 1983 claim, nor on the State constitutional claims.

The standard for summary judgment is more rigorous than the standard to avoid dismissal under Fed. R. Civ. P. 12(b)(6). In an action under § 1367, summary judgment is improper if there is a dispute of material facts regarding whether a constitutional right was violation and if that right is clearly established. For the purposes of the first prong, the facts must be taken in the light most favorable to the injured party.

### i.   Zane James' Fourth Amendment right to be free from unreasonable seizure was clearly established.

Paragraphs above concerning clear establishment of the law are incorporated by reference. For this prong, the standard is the same.

> ii.   **Considering the totality of the circumstances in the light most favorable to the plaintiff, there is a dispute of material facts as to whether Zane James' Fourth Amendment right was violated.**

In order to determine whether there was a violation of Zane's Fourth Amendment right against unreasonable seizure, the same factors are relevant on a Motion to Dismiss as are relevant here. The main difference is that if there is a dispute of material facts, summary judgment is improper. Material facts are those that are dispositive to the claim. For example, material facts here are those that are relevant to each of the *Graham* and *Larson* factors because those factors are used to determine whether a violation of rights has occurred in situations of excessive force.

From the materials available thus far, many of the events that occurred on May 29, 2018 are known only through an interview of Officer Betenson, because Officer Davies declined to comment on the matter. Doc. 2, ¶¶ 83, 98. Betenson reported that he was following Zane just behind Officer Davies and that he witnessed Zane's crash and subsequent shooting. He stated that after Zane crashed, he ran back past Davies' car and then turned onto the nearby lawn because Betenson moved his car into the way. According to Betenson, once Zane was on the lawn he began reaching into his pockets and was running in this fashion when Davies shot him in the back. Betenson was not wearing a body camera on the scene.

Officer Betenson's testimony is directly contradicted by one or more witnesses. Doc. 2, ¶60. The witness states *inter alia* that Zane had no weapon and was running or limping away. The witness also affirms that Davies gave no warning or opportunity for Zane to stop. Doc. 2, ¶60 c). No officers or citizens were nearby or in danger from Zane. Doc. 2, ¶60 d). Zane did not yell any threats at the officers or others and appeared to be injured and limping as he ran. No officer said, "stop or I'll shoot." Doc. 2, ¶60 c)-g). Most importantly, "witnesses confirm that

Officer Betenson arrived on scene just as Davies fired his fourth shot." Doc. 2, ¶60 h). Therefore, Betenson obviously could not have witnessed the things he claims to have witnessed.

Because he was not there, Betenson could not possibly have seen the crash or the way Zane was "running" or what he was doing with his arms. Because there is a genuine dispute as to how Zane was acting just before he was shot by Davies, summary judgment is improper. Zane's objective behavior in the moments after his crash is material because the reasonableness test, as applied to Davies, is dependent on the circumstances at the time of the shooting. If, as Betenson states, Zane was reaching into his pockets, that vastly changes the outcome of the analysis. Because these material facts are disputed, they must be presented to the fact-finder to ascertain the truth behind the claims of each witness. Thus, summary judgment is improper.

The Complaint also alleges that both Davies and Betenson gave authorities falsehoods and participated in a cover-up. Doc. 2, ¶¶79-88 and 89-95. The bottom line is simply this: there are multiple questions of fact at issue that make either a motion to dismiss or a motion for summary judgment inappropriate at this time. In the alternative, time to gather sufficient evidence through discovery is requested pursuant to Fed. R. Civ. P. 56(d).

The Complaint includes facts sufficient to establish a valid claim under Utah Constitution Art. 1 §§ 1, 7, 14, and 25. The facts are well-pled and they pass the tests laid out in *Spackman* and *Kuchcinski*. Thus, it is enough to survive a Motion to Dismiss. If the Court deems that Defendants have converted the motion to one for summary judgment, some period of discovery is requested before considering this claim as evidence must be gathered to support this claim. Fed. R. Civ. P. 56(d).

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, which is converted to a Motion for Summary Judgment under Fed. R. Civ. P. 12(d), should be denied.

Plaintiffs request oral argument because we feel the Court would benefit from a face-to-face discussion of these particular issues.

DATED this 25th day of July, 2019.

SYKES MCALLISTER LAW OFFICES, PLLC

 /s/ Robert B. Sykes
ROBERT B. SYKES
C. PETER SORENSEN
*Attorneys for Plaintiffs*

28