HEATHER S. WHITE (7674)
DANI N. CEPERNICH (14051)
SNOW CHRISTENSEN & MARTINEAU
10 Exchange Place, 11th Floor
Salt Lake City, Utah 84111
Telephone: (801) 521-9000
Fax No.: (801) 363-0400
hsw@scmlaw.com
dnc@scmlaw.com

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| AARON JAMES and TIFFANY JAMES, Heirs and Proposed Personal Representatives of the Estate of Zane James, <br><br> Plaintiffs, <br><br> vs. <br><br> CASEY DAVIES, and COTTONWOOD HEIGHTS; <br><br> Defendants. | **ANSWER TO PLAINTIFFS' AMENDED COMPLAINT** <br><br><br> Case No. 2:19CV341 HCN DBP <br><br><br> Judge Howard C. Nielson, Jr. <br> Magistrate Judge Dustin B. Pead |

Defendants Casey Davies (Officer Davies) and the City of Cottonwood Heights (City) (collectively Defendants) answer Plaintiffs'[1] Amended Complaint (Complaint) as follows:

**FIRST DEFENSE**

Plaintiffs' Complaint fails to state a claim upon which this Court may grant relief.

---

[1] The term "Plaintiffs" in this Answer includes the named Plaintiffs and Zane James.

## SECOND DEFENSE

Defendants admit the following facts:

1. The City is a municipality incorporated under the laws of the State of Utah.

2. Officer Davies resides in the State of Utah and was employed as a law enforcement officer with the City on May 29, 2018, the day Zane James was shot (Incident).

3. The night of May 27, 2018, Cottonwood Heights police officers attempted to stop a motor bike without lights. The rider was a white male with dark clothing and was wearing a backpack.

4. The officers did not pursue the motor bike when it fled.

5. On May 29, 2018, shortly after 3:00 a.m., it was reported over police radio that a white male had robbed the Smith's at 2039 East 9400 South using a black and silver handgun.

6. Less than three hours later, it was reported over the radio that just after 6:00 a.m. a white male with a similar description robbed the Macey's at 7850 South 1300 East using a silver handgun.

7. Minutes later, Cottonwood Heights Police Officer Bryan Betenson saw the suspect who had fled on a motorbike from City officers two nights earlier. Cottonwood Heights officers do not have in-car cameras and Officer Betenson was not wearing his body camera.

8. Officer Betenson, tried to stop the suspect but the suspect fled. Officer Betenson terminated the pursuit. Cottonwood Heights Police Department (CHPD) Sergeant Scott Ricks confirmed the termination over the radio.

9. Shortly after, a Sandy City Police Officer radioed that the suspect whom Officer Betenson tried to stop was the suspect who had just robbed Macey's, and who had only hours earlier robbed Smith's.

10. Officer Davies was at the Cottonwood Heights Police Department getting dressed to start his shift when he heard over the radio that Officer Betenson was pursuing the armed robbery suspect.

11. Officer Davies left to assist Officer Betenson. He was not wearing his body camera.

12. Officer Davies located and tried to stop the suspect but the suspect continued to flee.

13. Officer Davies radioed for confirmation that the suspect used a gun in the robbery. Dispatch confirmed he did.

14. With respect to the allegations of ¶¶ 53 and 55-59, Officer Davies asserts his 5th Amendment rights. Cottonwood Heights' does not have any independent information regarding the allegations in those paragraphs.

15. Still fleeing from the officers, the suspect's motorbike went down on 6670 South, but the suspect got up and ran into the yard of a home in the residential neighborhood.

16. Officer Davies shot the suspect as the suspect continued to flee.

17. Officer Betenson ran to the yard where Officer Davies and the suspect were and handcuffed the suspect for safety.

18. The two officers began providing first aid to the suspect and learned for the first time who the suspect was.

19. Other officers and paramedics began arriving, including CHPD Officer Kenyon Kawa. Officer Davies told the officers Zane was reaching for the left side of his body, so Officer Kawa searched Zane and pulled a black and silver pistol from Zane's left jacket pocket. It turned out to be a BB gun.

20. Chief Robby Russo and Lt. Dan Bartlett were informed of the shooting after it occurred but were unable to talk with Officer Davies.

21. When Lt. Bartlett returned to the police station, Aaron James was there waiting for him but did not know Zane had been shot. Aaron told Lt. Bartlett Zane was out of control and needed help, and Aaron was afraid Zane might hurt someone. Aaron told Lt. Bartlett he wanted Zane picked up on a warrant.

22. Lt. Bartlett told Aaron that Zane had just been shot in an altercation with officers and was at Intermountain Medical Center being treated for his injuries. Lt. Bartlett asked Aaron if he needed a ride to the hospital. Aaron declined.

23. Before releasing a recording of the Incident to the media, Lt. Bartlett informed the James family. The recording did not show the shooting. It showed what occurred immediately following.

24. There is and never has been any recording by any CHPD officer showing the events leading up to or capturing the moment of the shooting. Defendants are not aware of any recording of the events leading up to capturing the moment of the shooting from any other source.

25. Camera logs show Officer Davies' body camera was removed from the charging station at 5:43 a.m. on May 29, 2018. However, it was not removed by Officer Davies.

26. Camera logs show the camera was last powered off before the shooting on May 28, 2018 at 4:14 p.m. and remained powered off until June 30, 2018.

27. Camera logs further show that the only recording made by any CHPD officer on May 29, 2018 from 6:00 a.m. to 6:59 a.m. that morning was on body camera 69553, which is attached as Ex. 2 to Plaintiff's Complaint. It does not show the actual shooting but only the events immediately after the shooting. It is not from Officer Davies' body camera but from one belonging to one of the responding officers.

28. As stated above, Chief Russo and Lt. Bartlett had not been able to talk to Officer Davies. However, they were receiving media inquiries about what happened. They informed the media, based on the fact Officer Davies' shift did not start until 6:00 a.m., that there was no recording of the shooting because Officer Davies' had not yet arrived for work and was not wearing his camera. Chief Russo and Lt. Bartlett believed their statements to be true when they made them, and their statements were made in good faith, based on information available to them at the time.

29. Officer Davies signed a declaration on August 14, 2020 stating he was on his way to work and had not yet gotten to the police station before joining the pursuit. That statement was a mistake.

30. Officer Davies did not knowingly or intentionally mislead the Court or lie. When he realized the mistake, he acknowledged the mistake in a second declaration filed with the Court, and under oath during testimony during an evidentiary hearing, explaining how the mistake occurred, taking responsibility for the mistake, and apologizing for it.

31.	Defendants do not dispute that Tali Bruce testified as represented in paragraphs 208(c)-214, but deny her testimony was truthful or accurate.

32.	Defendants admit the City Manager and the Mayor met with Tiffany and Aaron James sometime in the fall of 2018, and that the Jameses shared concerns with them. However, they do not remember what was specifically discussed in the meeting.

33.	Plaintiffs cite to various documents, including Officer Davies's "employer statement" (*Garrity* statement); recordings; and photographs in their Complaint. Defendants aver that those documents, recordings, and photographs speak for themselves. Defendants deny all characterizations Plaintiffs make about those documents, recordings, and photographs.

34.	Defendants admit there are cameras outside the CHPD but deny the remaining allegations of paragraph 216.

Defendants deny each and every other allegation of Plaintiffs' Complaint except as specifically admitted. The following denials are based on lack of information:

35.	Defendants' denials of assertions made by or about Heather Dodd.

36.	Defendants' denials of Zane's claimed physical injuries.

37.	Defendants' denials of paragraphs 225-230.

### THIRD DEFENSE

Plaintiffs lack standing to pursue all or some of the claims asserted, and have failed to join indispensable parties.

### FOURTH DEFENSE

This Court lacks subject-matter jurisdiction because Defendants did not violate Plaintiffs' constitutional rights.

## FIFTH DEFENSE

Defendants did not violate Plaintiffs' clearly-established, particularized, constitutional, statutory, or common-law rights or privileges.

## SIXTH DEFENSE

Defendants acted in good faith, without malice, and their acts were justified and reasonable under the circumstances.

## SEVENTH DEFENSE

Plaintiff's claims are barred, or Defendants' actions mitigated, by mistake. Such mistakes have been particularly pleaded and set forth above.

## EIGHTH DEFENSE

Plaintiffs have made several assertions of fraud, which they have failed to plead with particularity.

## NINTH DEFENSE

Defendants are not liable under 42 U.S.C. § 1983 based on *respondeat superior* or any other theory of supervisory or derivative liability.

## TENTH DEFENSE

Any constitutional violation that allegedly occurred was not the result of a deliberately-indifferent custom, policy, or practice of the City.

## ELEVENTH DEFENSE

Defendants are entitled to absolute and/or qualified immunity.

**TWELFTH DEFENSE**

Defendants cannot be liable for any wrongful conduct committed by individuals or entities over which Defendants had no control.

**THIRTEENTH DEFENSE**

Plaintiffs' claimed injuries were the result of a pre-existing and/or independent intervening, and/or superseding cause.

**FOURTEENTH DEFENSE**

To the extent Plaintiffs have asserted state law claims, Defendants are absolutely immune from Plaintiffs' state law claims, and those claims are barred by the Governmental Immunity Act of Utah, including, but not limited to, Utah Code Ann. §§ 63G-7-201, 63G-7-202 and 63G-7-301, and further by Plaintiffs' failure to comply with the appropriate provisions of that Act, including, but not limited to Utah Code Ann. §§ 63G-7-401, 63G-7-402, 63G-7-403 and 63G-7-601. Accordingly, the Court lacks subject-matter jurisdiction with respect to Plaintiffs' state law claims.

**FIFTEENTH DEFENSE**

Plaintiffs' state law claims are barred by their federal constitutional claims.

**SIXTEENTHH DEFENSE**

Defendants' potential liability for Plaintiffs' state law claims is limited to the maximum sum provided by Utah Code Ann. § 63G-7-604.

**SEVENTEENTH DEFENSE**

Officer Davies did not act, or fail to act, through fraud or willful misconduct, as required by Utah Code Ann. § 63G-7-202.

### EIGHTEENTH DEFENSE

Any injury or damage Plaintiffs sustained was caused or contributed to by their own fault, which equals or exceeds that of Defendants, if any, thus barring recovery pursuant Utah Code Ann. § 78B-5-817 through 78B-5-823.

### NINETEENTH DEFENSE

Any injury or damage Plaintiff sustained was solely caused or contributed to by the fault of codefendants and/or third persons not presently parties to this action and fault should be allocated to each under Utah Code Ann. §§ 78B-5-817 through 78B-5-823. Third parties not presently parties will be identified pursuant to Utah Code Ann. § 78B-5-821(4), U.R.C.P. 9, and DUCivR 9-1.

### TWENTIETH DEFENSE

Plaintiffs failed to mitigate their damages, and thus, any potential recovery must be reduced or barred.

### TWENTY-FIRST DEFENSE

All of part of Plaintiffs' claimed injuries, and/or the resulting damages, predated the Incident.

### TWENTY-SECOND DEFENSE

Plaintiffs' claims are barred by the doctrines of estoppel, laches and/or unclean hands, last clear chance, assumption of the risk, waiver, consent, acquiescence, ratification, and release.

### TWENTY-THIRD DEFENSE

Plaintiffs are not entitled to a jury trial on their claims for equitable relief.

## TWENTY-FOURTH DEFENSE

Plaintiffs' claims are barred by the applicable statutes of limitations, Utah Code Ann. §§ 78B-2-307, 78B-2-304(4), and 63G-7-403.

## TWENTY-FIFTH DEFENSE

Plaintiffs' damages, if any, should be limited to those that are both reasonable and necessary, and those that were proximately caused by Defendants' alleged misconduct.

## TWENTY-SIXTH DEFENSE

Plaintiffs' punitive damage claim is barred by, *inter alia*, the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, federal common law, Article I, Sections 7, 9, 10, 11, 12, 13, 18, 22 and 24 of the Utah Constitution, and the Governmental Immunity Act of Utah, § 63G-7-603.

WHEREFORE, Defendants request that the Court dismiss Plaintiffs' Complaint, that Plaintiffs take nothing thereby, and that the Court order Plaintiffs to pay Defendants their costs and attorneys' fees pursuant to 42 U.S.C. § 1988 and Utah Code Ann. §§ 78B-5-825 and 78B-3-104.

## JURY TRIAL DEMANDED

Defendants hereby request a jury trial on all claims at law.

DATED this 20th day of September, 2021.

    SNOW CHRISTENSEN & MARTINEAU

    */s/ Heather S. White*
    Heather S. White
    Dani N. Cepernich
    *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of September, 2021, I electronically filed the foregoing **ANSWER TO PLAINTIFFS' AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF System:

>   Sam Meziani
>   Seamus Appel
>   Goebel Anderson PC
>   405 S Main Street, Ste. 200
>   Salt Lake City, UT 84111
>   smeziani@gapclaw.com
>   sappel@gapclaw.com
>
>   *Attorneys for Plaintiff*
>
>   Michael W. Young
>   PARSONS BEHLE & LATIMER
>   201 South Main Street, Ste. 1800
>   Salt Lake City, UT 84111
>   myoung@parsonsbehle.com
>   *Attorney for Tali Bruce*

/s/ Annette Gamero