UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| AARON JAMES and TIFFANY JAMES, Personal Representatives of the Estate of Zane James, <br><br> Plaintiffs, <br><br> v. <br><br> CASEY DAVIES, and CITY OF COTTONWOOD HEIGHTS, <br><br> Defendants. <br><br> ROBERT B. SYKES, and SYKES McALLISTER LAW OFFICES, PLLC, <br><br> Intervenors. | MEMORANDUM DECISION AND ORDER <br><br> Case No. 2:19-cv-341-HCN-DBP <br><br> Howard C. Nielson, Jr. <br> United States District Judge |

Plaintiffs Aaron James and Tiffany James, representatives of Zane James's estate, have settled their dispute with Defendants Casey Davies and the City of Cottonwood Heights that was the subject of this action, and Plaintiffs and Defendants have filed a stipulation and joint motion to dismiss all of Plaintiffs' remaining claims. Intervenors Robert B. Sykes and Sykes McAllister Law Offices, Plaintiffs' former counsel in this action and his law firm, seek to have the court exercise supplemental jurisdiction over their dispute with Plaintiffs regarding unpaid legal fees. The court declines to do so.

I.

On May 29, 2018, Officer Davies shot and killed Zane James during a police chase that ensued after Mr. James fled from the scene of a robbery. *See* Dkt. No. 96 at 1, 4 ¶¶ 15, 23, 110. Plaintiffs, Mr. James's parents, engaged Mr. Sykes in March 2019 to represent them in this action. *See* Dkt. No. 187 at 2. But Plaintiffs grew dissatisfied with Mr. Sykes' representation. Among other things, Mr. Sykes failed to file a timely administrative notice of claim, which

precluded Plaintiffs from asserting a state-law tort claim for the death of their son. *See id.* And, according to Plaintiffs, Mr. Sykes sought to pressure them into accepting what they regarded as a nominal settlement of their claims. *See id.* at 3. So in February 2021, they fired Mr. Sykes and retained new counsel. *See id.* The next month, Plaintiffs and Mr. Sykes entered into a settlement agreement regarding the attorneys' fees due Mr. Sykes for his previous work on the litigation, but just a few months later Plaintiffs refused to pay the second and final installment contemplated by this agreement. *See* Dkt. No. 204 at 3–4.

Approximately one year later, Plaintiffs, represented by new counsel, reached what has been widely reported to be a multi-million dollar settlement with Defendants. *See* Dkt. No. 195 at 2–3. Plaintiffs and Defendants then filed a stipulation and joint motion to dismiss Plaintiffs' claims on July 22, 2022. *See* Dkt. No. 188. Meanwhile, on July 7, 2022, Mr. Sykes and his law firm filed their motion to intervene, *see* Dkt. No. 185, which Chief Magistrate Judge Pead granted on August 19, 2022, *see* Dkt. No. 192. Mr. Sykes also filed notice of an attorney's lien, seeking to recover from the proceeds of Plaintiffs' and Defendants' settlement attorneys' fees that he maintains Plaintiffs owe him under the fee-settlement agreement. *See* Dkt. Nos. 186, 189.

## II.

28 U.S.C. § 1367(a) provides that

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

As the Supreme Court has explained, this statute codifies

> principles of pendent and ancillary jurisdiction by which the federal courts' original jurisdiction over federal questions carries with it jurisdiction over state law claims that derive from a common nucleus of operative fact, such that the relationship between the federal claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional case.

2

*City of Chicago v. International Coll. of Surgeons*, 522 U.S. 156, 164–65 (1997) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)) (cleaned up). Here, the federal claims over which the court has original jurisdiction arise out of the tragic events that took place on the morning in May 2018 when Mr. James fled from the police and was shot and killed by Officer Davies. *See* Dkt. No. 96 at ¶¶ 8–110. By contrast, Intervenors' claim arises out of a contract between Plaintiffs and Mr. Sykes that these parties entered into in March 2021, shortly after Plaintiffs terminated Mr. Sykes as their counsel in this action. *See* Dkt. No. 204 at 3; Dkt. No. 187 at 3.

It is far from obvious that the fee dispute between Plaintiffs and Intervenors arises from the same "nucleus of operative fact" that gave rise to Plaintiffs' federal claims nearly three years earlier. Indeed, the Seventh Circuit has held that federal "jurisdiction does not extend to a state law contract dispute after the original litigation has ended, even if the dispute is between a party and his attorney." *Nichols v. Longo*, 22 F.4th 695, 699 (7th Cir. 2022). That court reasoned that "when the matter brought before the district court cannot be considered part of the underlying case, that dispute is not within the ancillary enforcement jurisdiction of the district court." *Id.* The Tenth Circuit, however, has taken a more expansive view of the district courts' supplemental jurisdiction in this context, holding that "[d]etermining the legal fees a party to a lawsuit properly before the court owes its attorney, with respect to the work done in the suit being litigated, easily fits the concept of ancillary jurisdiction." *Jenkins v. Weinshienk*, 670 F.2d 915, 918 (10th Cir. 1982); *see also Garrick v. Weaver*, 888 F.2d 687, 690 (10th Cir. 1989) (quoting *Jenkins*).

To be sure, in this case Intervenors' claim against Plaintiffs is not based directly on Mr. Sykes' "work done in the suit being litigated." *Jenkins,* 670 F.2d at 918. Rather, it is based on Plaintiffs' alleged breach of the settlement agreement that Plaintiffs entered into with Mr. Sykes

3

*after* they terminated him as their counsel. Nevertheless, Intervenors' dispute with Plaintiffs involves, at bottom, the amount of compensation that Mr. Sykes is entitled to receive for representing Plaintiffs in this federal action. The court has little doubt that it thus falls within the scope of the Tenth Circuit's holdings in *Jenkins* and *Garrick* and that the court thus *could* exercise supplemental jurisdiction.

### III.

But that does not mean the court *should* exercise such jurisdiction. "Even where a common nucleus of operative fact exists, federal jurisdiction is not mandatory over pendent claims or parties. Rather, supplemental jurisdiction is not a matter of the litigants' right, but of judicial discretion." *Vox Marketing Group v. Prodigy Promos*, 556 F.Supp.3d 1280, 1289 (D. Utah 2021) (cleaned up). 18 U.S.C. § 1367(c) thus provides that

> district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—
>
> > (1) the claim raises a novel or complex issue of State law,
> >
> > (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> >
> > (3) the district court has dismissed all claims over which it has original jurisdiction, or
> >
> > (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Based on careful consideration of these factors, the court declines to exercise supplemental jurisdiction over the dispute between Intervenors and Plaintiffs.

*First*, Plaintiffs and Defendants have reached a resolution of Plaintiffs' claims, and they have filed a stipulation and joint motion to dismiss those claims. *See* Dkt. No. 188. That motion is ripe for decision and the court sees no reason, apart from Intervenors' desire to maintain this court's supplemental jurisdiction, why that motion should not be granted. "The Tenth Circuit has

4

explained that when all federal claims have been dismissed, the court may, and usually should, decline to exercise supplemental jurisdiction over any remaining state claims." *Reyes v. N.A.R. Inc.*, 546 F. Supp 3d 1031, 1042 (D. Utah 2021) (cleaned up). Perhaps this guidance and Section 1367(c)(3) do not apply directly in the circumstances here, where the decision whether to grant Plaintiffs' and Defendants' stipulated motion to dismiss is bound up with the decision whether to exercise supplemental jurisdiction over Intervenors' claims. But surely the considerations they reflect apply with great force here. There is no longer any ongoing dispute in this action over which the court has original jurisdiction, and the court sees no sound basis for holding the dismissal of Plaintiffs' federal claims hostage to the litigation and adjudication of Intervenors' state-law claims.

*Second*, the dispute that Intervenors would have this court resolve raises complex and disputed issues of state law that would require significant briefing and factual development—likely necessitating evidentiary hearings or even a jury trial. Plaintiffs represent that they will argue that the contract Intervenors seek to enforce is voidable and that Mr. Sykes is liable to them for malpractice and for breach of fiduciary duty. *See* Dkt No. 201 at 2, 4. And although Intervenors seek to portray their dispute with Plaintiffs as a simple question of interpreting a contract and determining the value of Mr. Sykes' work, Intervenors' own briefing reveals still more lurking state-law disputes. The court is in no position to provide an exhaustive list of the issues that will arise in the dispute between Intervenors and Plaintiffs. But it is clear that this dispute will raise at least the following disputed questions—all of which turn on state law:

- Whether Mr. Sykes committed malpractice;
- Whether Mr. Sykes breached his fiduciary duty to Plaintiffs;
- Whether Mr. Sykes committed fraudulent concealment;

- Whether the provision of the fee-settlement agreement purporting to release Mr. Sykes of any liability to the Plaintiffs arising out of his representation is effective;

- Whether Plaintiffs' request for an extension to pay the second installment due under the fee-settlement agreement reaffirmed their agreement to pay Mr. Sykes;

- Whether an attorney's lien may properly be lodged in a case where the parties have reached a private settlement that does not require any judicial action other than dismissal of Plaintiffs' claims by stipulation and where the funds from which the attorney seeks satisfaction have neither been awarded as damages by the court nor paid into the court's registry;[1] and

- Whether an attorney may file a lien against a former client based on a contract entered into *after* he has been terminated by his client and replaced with new counsel.

Even this preliminary list leaves no doubt of the broad range of substantial state law issues raised by Intervenors' and Plaintiffs' dispute or that this dispute raises "novel or complex issue[s] of State law." 28 U.S.C. § 1367(c)(1).

***Third,*** it is equally clear that these numerous and complex state law issues would "substantially predominat[e] over the claim or claims over which the district court has original jurisdiction." *Id.* § 1367(c)(2). Indeed, given that no live federal claims remain at issue in this action, going forward, these state-law issues would not only predominate over claims within the court's original jurisdiction, they would be the ***only*** issues before the court. To be sure, subject matter jurisdiction is usually determined "when a federal court's jurisdiction is first invoked," such as when a plaintiff files suit or a defendant files a notice of removal. *E.g.*, *Double Eagle Energy Servs., L.L.C. v. MarkWest Utica EMG, L.L.C.*, 936 F.3d 260, 263 (5th Cir. 2019). So perhaps Section 1367(c) contemplates that the determination whether state-law claims will predominate over federal claims will be made at the outset of the litigation. This is far from clear,

---

[1] Indeed, under Federal Rule of Civil Procedure 41(a)(1)(A)(ii), a stipulation of dismissal ordinarily is self-executing and does not require an order of the court.

6

however: the determination contemplated by Section 1367(c)(3)—whether "the district court has dismissed all claims over which it has original jurisdiction"—clearly must be made later in the litigation, and the Supreme Court has emphasized that the exercise of supplemental jurisdiction rests on pragmatic considerations of "judicial economy, convenience and fairness to litigants." *Gibbs*, 383 U.S. at 726. In addition, Intervenors did not seek to participate in this litigation or to invoke this court's supplemental jurisdiction until after Plaintiffs publicly announced their settlement with Defendants. It thus seems more than reasonable to evaluate whether the claims raised by Intervenors' dispute with Plaintiffs would substantially predominate over the claims within this court's original jurisdiction based on the state of the litigation at the time of intervention. The court need not decide this question, however, for regardless of whether Section 1367(c)(2) applies directly in the circumstances here, the considerations underlying this provision clearly weigh against exercising supplemental jurisdiction in these circumstances, at least by analogy.

*Fourth*, even though technically within the scope of supplemental jurisdiction under Tenth Circuit precedent, Intervenors' breach-of-contract claim has little factual connection with Plaintiffs' federal claims. And Plaintiffs' contentions of malpractice, breach of fiduciary duty, fraudulent inducement, and so forth—though indisputably bound up with Intervenors' claim—are still more factually attenuated from the only claims within this court's original jurisdiction. The court is loath to exercise whatever discretion it may have to assume jurisdiction over matters so remote from the federal claims on which its authority to decide this action ultimately rests.

*Finally*, the court notes that district courts frequently decline to exercise supplemental jurisdiction over disputes similar to this one. *See, e.g.*, *Hunt v. Schauerhamer*, 2016 WL 1369367, *4–5 (D. Utah Apr. 6, 2016); *Phillips v. AWH Corp.*, 2008 WL 4151317, at *3 (D.

7

Colo. Sept. 4, 2008); *Ryther v. KARE 11*, 976 F. Supp. 853, 857–58 (D. Minn. 1997). The court finds these decisions instructive here.

*   *   *

For the foregoing reasons, the court declines to exercise supplemental jurisdiction over the dispute between Intervenors and Plaintiffs. And because there is no basis other than Intervenors' request to exercise such jurisdiction to further delay dismissal of Plaintiffs' claims, the court **GRANTS** Plaintiffs' and Defendants' stipulation and joint motion to dismiss.

**IT IS SO ORDERED.**

Dated this 6th day of February, 2023.
BY THE COURT:

_____
Howard C. Nielson, Jr.
United States District Judge